IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PARKRIDGE 6 LLC, et al., )
       Plaintiffs, )
        )
v. ) 1:09cv1312 (LMB/IDD)
        )
U.S. DEPARTMENT OF TRANSPORTATION, )
et al., )
       Defendants. )

## MEMORANDUM OPINION

Before the Court are motions to dismiss from all defendants in this civil action brought by plaintiffs Parkridge 6 LLC ("Parkridge"), a Virginia-based LLC which owns property adjoining the proposed development route of the Dulles Corridor Metrorail Project ("Project"), and the Dulles Corridor Users Group ("Users Group"), a Virginia-based civic advocacy group established to monitor the development of the Project. Defendants are the United States Department of Transportation ("USDOT"), United States Secretary of Transportation Ray LaHood in his official capacity, Federal Transit Authority Administrator Peter M. Rogoff in his official capacity ("FTA"), Federal Highway Administration Acting Deputy Administrator Jeffrey Paniati (now replaced by Administrator Victor Mendez) in his official capacity ("FHWA"), and FHWA Virginia Division Administrator Roberto Fonseca-Martinez in his official capacity ("FHWA") (hereinafter "the Federal defendants"); Virginia Secretary of Transportation Pierce R. Homer in his official capacity ("VDOT"); and the Metropolitan Washington Airports Authority President James Bennett in his official

capacity ("MWAA"). The Project involves the expansion of the Washington Metropolitan Metrorail system for twenty-three miles in Northern Virginia to extend Metrorail service to Washington Dulles International Airport ("Dulles Airport"). The Project, which is well underway, is having and will continue to have a major impact on many northern Virginia areas, including the area surrounding Route 267, a Virginia state highway.

In their fifteen-count, 130-page complaint, plaintiffs allege that the Project violates numerous provisions of federal and Virginia law, however, the length and vagueness of the complaint make it difficult to discern the bases for many of plaintiffs' claims, and even which defendants are involved. For example, although the USDOT and Secretary LaHood are named in the caption as defendants in this action, none of the individual counts lists them as defendants. Counts Four and Twelve name the "FAA" as a defendant although that entity is not included in the caption and it has neither been served with the complaint nor entered an appearance. When asked during oral argument about the status of the FAA, plaintiffs' counsel was unable to confirm whether plaintiffs intended to include the FAA as a defendant in this action.

If these pleading defects were the only problem the complaint could be dismissed for failing to comply with Fed.R.Civ.P. 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," and the plaintiffs could

be granted leave to file an amended complaint. However, as discussed below, the dismissal of this complaint must be with prejudice because the plaintiffs lack standing to raise the claims. In addition, several claims are barred under established principles of sovereign immunity, and several counts fail to allege a claim upon which relief can be granted. Accordingly, the defendants' motions to dismiss will be granted.

I.  THE ALLEGATIONS IN THE COMPLAINT

Count One alleges that the FTA violated 49 U.S.C. § 5309, which authorizes capital investment grants, by failing to include certain types of transit alternatives in its "alternatives analysis". As a remedy, plaintiffs seek an injunction declaring that the alternatives analysis was insufficient as a matter of law and requiring the FTA to include "shared guideway congestion managed lanes and a formal just in time ridesharing program," and barring further expenditures until a full alternative analysis, including various environmental impact analyses are performed. Complaint at ¶¶ 291-94.

Count Two alleges that the MWAA's collection of tolls along Route 267 violates the Virginia Constitution because such collection constitutes taxation by unelected officials. Id. at ¶¶ 295-319. This count does not request any specific remedy, and appears to be nothing more than a polemic against the project.

Count Three alleges that the FTA, by conditioning its federal funding on a contribution from Fairfax County, has violated

3

Virginia law that requires legislative ratification of general obligation bonds. Id. at ¶¶ 320-26. Plaintiffs seek an injunction to prevent the FTA from distributing any more federal funds to the Project until Fairfax County has secured approval to pay its share. Id. at ¶ 327.

Count Four[1] alleges that the MWAA has breached its lease agreement with the FAA because the MWAA has failed to operate the Washington Reagan National and Dulles International Airports as a "unit," which is an alleged requirement of the lease. Id. at ¶ 328. The remedy sought is an injunction against the WMAA prohibiting it from spending any money until it has proposed and justified a way of operating both airports as a unit. Id. at ¶ 343.

Count Five alleges a violation of unspecified federal law by the FHWA and MWAA for a failure to follow, or obtain a waiver of, federal highway safety standards. Id. at ¶¶ 344-47. As a remedy, plaintiffs seek an injunction against further expenditures of federal money for any work within the 400 foot strip of land leased from the FAA absent approval of highway improvement plans by the FHWA or a waiver by the FHWA if such waiver is found to be in the public interest." Id. at ¶ 348.

Count Six alleges that the MWAA is acting beyond the scope of Va. Code § 5.1-156 by expanding construction beyond the

---

[1] Counts Four and Twelve are brought in part against the Federal Airport Authority ("FAA"), which is not a named defendant in the caption of the Complaint.

4

appropriate strip of tolled highway along the Route 267 corridor and its inner non-tolled lanes. Id. at ¶¶ 349-364. Plaintiffs seek a declaratory judgment that would confine the MWAA's construction activities to "airport property" or "airport facilities," and an injunction against further spending, id. at ¶¶ 365-66, the result of which would obviously curtail among other activities, the construction of metro stations in the Tysons Corner area.

Count Seven alleges that the building of a railway exceeds MWAA's statutory purpose, id. at ¶¶ 368-69, and seeks "an injunction against any construction approved or authorized by MWAA . . . outside the 400 foot boundaries of the original FAA lease for the Dulles Airport Access Highway." Id. at ¶ 370.

Count Eight alleges that the VDOT and the MWAA have violated the Virginia Freedom of Information Act ("VFOIA"), Va. Code § 2.2-3700 et seq..[2] Id. at ¶¶ 371-74. Among the remedies sought is a declaration that the MWAA is subject to the Virginia FOIA and an order requiring that all documents and records regarding the taxing and construction of Route 267 be "provided any person [sic] properly requests the same." Id. at ¶¶ 375-76.

Count Nine alleges that the VDOT is improperly applying the "Virginia Public Private Partnership Act" by engineering a sole-source, noncompetitive contract with a private entity (the MWAA)

---

[2] Count Eight only names the VDOT, but the remedy sought is a declaration that the VFOIA covers both the VDOT and the MWAA.

without requiring the private entity to put up capital or share risks. Id. at ¶¶ 377-78. As a remedy, plaintiffs want the Project rebid on a competitive basis. Id. at ¶ 379.

Count Ten alleges that the VDOT violated the Virginia Public-Private Transportation Act of 1995, Va. Code §§ 56-556 et seq., and associated regulations in "hiding the vote and reasons therefore which justified the sudden burial of an already approved Bus Rapid Transit project in favor of a speculative rail venture." Id. at ¶¶ 380-418. Plaintiffs seek an injunction of the Dulles Rail plan and want the injunction to require the defendants to consider specific alternative concepts. Id. at ¶¶ 419-420.

Count Eleven alleges that the MWAA and VDOT have failed to cease collecting tolls from Route 267 although the tolls have paid for the highway's construction cost, in violation of Va. Code § 33.1-287, which plaintiffs believe requires cessation of tolls on projects for which payment has been completed. Id. at ¶¶ 421-434. Among the remedies plaintiffs seek is an order requiring the refund of all excessive Route 267 revenue beyond what is needed to pay off its construction, expansion, and financing costs to date. Plaintiffs estimate that surplus to be $400 million. Plaintiffs also want an independent outside auditor to be appointed. Id. at ¶¶ 435-36.

Count Twelve alleges breach of the lease between the FAA and the MWAA because the MWAA has never completed a "Dulles Master Plan". Id. at ¶¶ 438-441. Plaintiffs want the MWAA enjoined from

6

spending funds for the rail project until it is in compliance with a Master Plan. Id. at ¶ 442.

Count Thirteen alleges that the MWAA and VDOT violated the Virginia Constitution in that the debt Fairfax County will incur by partially funding the Project was not passed by referendum. Id. at ¶¶ 443-457. Among the remedies sought is a declaratory judgment that neither "Fairfax County nor MWAA as its de facto representative and agent" may contract any debt without "a majority vote of the qualified voters voting" on the debt and plaintiffs also request an injunction against Fairfax's issuance of debt without a vote. Id. at ¶¶ 458-59.

Count Fourteen alleges that the MWAA[3] violated 23 C.F.R. §§ 620, 635, 636, and 710 by failing to complete a market validation study to determine what private entities could bid to operate Route 267. Id. at ¶¶ 460-64 Plaintiffs seek an injunction against any change to the toll structure or operation of Route 267 until completion of a proper market validation process that would set the property price. Id. at ¶ 465.

Count Fifteen, brought against the MWAA and "the Commonwealth of Virginia," alleges violation of state statutes concerning prompt repayment of bonds from surplus revenues. Id. at ¶ 466. Plaintiffs request "immediate repayment of outstanding revenue bonds prior to any other expenditure of funds along Route 267 or

---

[3] Count Fourteen is also brought against the FHWA, but contains no explanation of the FWHA's relevant activities.

Tysons Corner." Id. at ¶ 467.

II. STANDING

The MWAA and the federal defendants have moved to dismiss the complaint on the ground that neither plaintiff has standing to raise the claims alleged. A plaintiff establishes standing by demonstrating that it has a concrete, particularized, and actual or imminent injury in fact that is fairly traceable to a defendant's conduct and will likely be remedied by a favorable ruling. Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc., 528 U.S. 167, 180-81 (2000). For the reasons below, both plaintiffs lack standing to bring this civil action against the federal defendants and the MWAA.

Plaintiff Users Group clearly lacks standing to bring this civil action against either group of defendants because the Users Group does not identify any particularized injury, mentioning only a general interest by concerned citizens in the progress of the Project. As argued by the various defendants in their motions to dismiss, the Users Group accordingly lacks standing because citizens' concerns are insufficient to establish standing under both Article III of the United States Constitution and the prudential prohibition against "generalized grievances," which are "more appropriately addressed in the representative branches." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1 at 12 (2000). See also Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) (holding that the prohibition against citizen standing is derived

8

from Article III); Ex parte Levitt, 302 U.S. 633 (1937) (a person cannot gain standing as a citizen claiming a right to have the government follow the law).

Parkridge similarly lacks standing to bring this civil action. Parkridge claims it is injured by special taxes and by the tolls collected on Route 267 that fund the Project, and the following consequences of the Project: increased congestion, increased air pollution, and unsafe driving conditions. None of these injuries are sufficient to establish standing for Parkridge.

Parkridge's allegations of increased congestion, increased air pollution, and unsafe driving conditions cannot support standing for Parkridge 6, because, as the MWAA has argued, an LLC, does not drive a car or breath the air. Parkridge has not alleged third-party standing on behalf of its retail employees or customers, but even if it had, it would not qualify for third-party standing for numerous reasons.[4] Parkridge's reliance on

---

[4] Third-party standing is permitted only where the third party is unlikely to assert his or her own rights, see Eisenstadt v. Baird, 405 U.S. 438, 446 (1972), where there is a close relationship between the advocate and the third party such as where the individual seeking standing is part of the third party's constitutionally protected activity, see Pierce v. Society of Sisters, 268 U.S. 510 (1925), or where doctors raise the rights of their patients, see Singleton v. Wulff, 428 U.S. 106 (1976). Although in some circumstances, vendors can assert the rights of their customers, see Craig v. Boren, 429 U.S. 190 (1976), this is only permitted when the vendor suffers "direct economic injury." Id. at 194 ("She is obliged either to heed the statutory discrimination, thereby incurring a direct economic injury through the constriction of her buyers' market, or to disobey the statutory command and suffer . . . sanctions and perhaps loss of license." (internal quotation marks omitted)). Parkridge has alleged only a speculative, nonspecific future injury caused by a possible decrease in customers who choose not to visit Parkridge

payment of tolls fails to support standing for the same reasons, and its reliance on payment of special transportation taxes to Fairfax County cannot establish standing because a tax paid to Fairfax County is not traceable to any of the named defendants.

Neither of the plaintiffs have alleged a valid basis for standing as to any of the federal defendants or the WMAA, therefore the Complaint must be dismissed with prejudice as to these defendants.

III. SOVEREIGN IMMUNITY OF THE VDOT

Even if the plaintiffs had standing to bring their claims against the VDOT, those claims would have to be dismissed under the doctrine of sovereign immunity.[5] Plaintiffs allege that the VDOT, an agency of the Commonwealth of Virginia, has failed to comply with the Virginia Public Private Partnership Act, the Virginia Public Private Transportation Act, and Va. Code § 33.1-287. Sovereign immunity clearly prevents federal courts from ordering state officials to conform their conduct to state law. Pennsurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984); Bragg v. West Virginia Coal Ass'n, 248 F.3d 275, 293 (4th Cir. 2001) ("[S]overeign immunity also bars a court's grant of any type of relief, whether retrospective or prospective, based upon a State official's violation of State law."). As the VDOT correctly

---

due to increased tolls. That allegation is nowhere near the "direct economic injury" present in Craig.

[5] The VDOT did not move to dismiss the complaint based on plaintiffs' lack of standing.

10

argues in its pleadings, the plaintiffs have the burden of showing that the Commonwealth has waived its sovereign immunity. Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005).

In their opposition to the VDOT's Motion to Dismiss plaintiffs raise two arguments. First they rely on one case, Gray v. Virginia Secretary of Transportation, 662 S.E.2d 66 (Va. 2008), to argue that because the Virginia Supreme Court found that sovereign immunity was waived as to claims involving violations of certain self-executing provisions of the Virginia Constitution, the plaintiffs may sue VDOT in federal court. What the plaintiffs miss in their reliance on Gray is that the decision is narrowly limited to certain specific constitutional provisions, does not deal with the statutes cited by the plaintiffs, and, most significantly, is silent as to waiver of sovereign immunity in a federal proceeding. The VDOT correctly responds that a state's waiver of its sovereign immunity from suit in its own state courts does not waive its immunity from suit in federal court. In re Secretary of Department of Crime Control and Public Safety, 7 F.3d 1140, 1146-47 (4th Cir. 1993). Because a waiver of sovereign immunity must be clear and unambiguous, and there is no indication in either the Virginia Constitution or any of the Virginia statutes cited by plaintiffs that the Commonwealth intended to waive its immunity from suit in federal court on the issues raised

by plaintiffs, their claims against the VDOT will be dismissed.[6] Accordingly, all of the plaintiffs' claims against the VDOT will be dismissed as barred by sovereign immunity.

IV. ADDITIONAL PROBLEMS WITH THE COMPLAINT

Even if plaintiffs had Article III standing, their claims as to Counts Four, Five, Six, Seven, Twelve and Fourteen, which allege various violations of the contract between the MWAA and the FAA for the land on which the Project is taking place, violations of various federal regulations concerning highway safety and market validation studies, and violations of the MWAA's enabling statute, would have to be dismissed as a matter of law for failing to statute a claim under Fed.R.Civ.P.12(b)(6). The MWAA correctly points out that the plaintiffs do not have standing to bring these claims as there is no private right of action to enforce the MWAA's contracts or its compliance with the law, and plaintiffs have not identified any such right.

Counts Two and Thirteen, which allege that the MWAA violated provisions of the Virginia Constitution, Count Eight, which alleges a violation of the VFOIA, and Count Fifteen, which alleges that the MWAA violated Va. Code § 33.1-287, must also be dismissed because each count assumes, contrary to federal law, that the MWAA is required to follow state law or state constitutional requirements.

---

[6] Plaintiffs' second argument, that invocation of a federal court's supplemental jurisdiction under 28 U.S.C. § 1367, trumps sovereign immunity is not supported by any relevant authority.

The MWAA is "a political subdivision constituted to operate and improve the Metropolitan Washington Airports serving the Metropolitan Washington area[,]" which exists "independent of Virginia and its local governments, the District of Columbia, and the United States Government[.]" 49 U.S.C. §§ 49106(a)(2) and (3). It was created under an interstate compact between the Commonwealth of Virginia and the District of Columbia approved by the United States Congress pursuant to the Compact Clause of the United States Constitution. U.S. Const. art I, § 10. The MWAA's Compact is therefore considered a "law of the United States." See New Jersey v. New York, 523 U.S. 767, 811 (1988) (Congressional approval "transforms an interstate compact within [the Compact Clause] into a law of the United States."). MWAA's Compact gives it broad authority to "fix, revise, charge, and collect rates, fees . . . and other charges for the use of the airports." Va. Code § 5.1-156(A)(8); 49 U.S.C. § 49106(b)(1)(E) (MWAA "shall be authorized . . . to levy fees or other charges"). The "airports" are defined to include the "Dulles . . . Right-of-way" on which the Route 267 toll road was built. 49 U.S.C. § 49103(3)-(4); Va. Code § 5.1-152. The MWAA is therefore authorized to levy tolls on the roadway, and any Virginia law or provision of the Virginia Constitution that conflicts with that authority is preempted under the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, § 2. See also AES Sparrows Point PNG, LLC v. Smith, 527 F.3d 120, 125 (4th Cir. 2008)("Under the Supremacy

13

Clause, state law that conflicts with federal law is without effect." (internal quotations omitted)). Accordingly, Counts Two, Eight, Thirteen, and Fifteen are preempted by the MWAA's Compact and must be dismissed.

Count Eight would have to be dismissed on the additional ground that the VFOIA does not apply to an entity unless it is specifically included in the VFOIA statute. The VFOIA applies only to meetings of "public bodies," and to "public records," which are defined as records of a "public body." A "public body," in turn, is defined as any "board, bureau, commission, district or agency of the Commonwealth or of any political subdivision of the Commonwealth." Va. Code §§ 2.2-3707(A), 3704(A), and 2701. Because the MWAA is not a board, bureau, commission, district or agency of the Commonwealth or of any political subdivision of the Commonwealth, 49 U.S.C. § 49106(a)(2), Count Eight must be dismissed.

V. CONCLUSION

For all of these reasons, the Complaint in its entirety will be dismissed with prejudice by an appropriate Order to be issued with this Opinion.

Entered this 6th day of April, 2010.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

14